# United States Court of Appeals for the Federal Circuit

2007-1080


MICRON TECHNOLOGY, INC.,

Plaintiff-Appellant,

v.


MOSAID TECHNOLOGIES, INC.,

Defendant-Appellee.


William F. Lee, Wilmer Cutler Pickering Hale and Dorr LLP, of Boston, Massachusetts, argued for plaintiff-appellant. With him on the brief were William G. McElwain, Todd C. Zubler, and Gregory H. Lantier, of Washington, DC. Of counsel on the brief were Robert E. Freitas and Michael C. Spillner, Orrick, Herrington, & Sutcliffe LLP, of Menlo Park, California.

Donald R. Dunner, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC, argued for defendant-appellee. With him on the brief were Don O. Burley, Darrel C. Karl, and Kara F. Stoll. Of counsel on the brief was Henry Bunsow, Howrey LLP, of San Francisco, California. Of counsel were Erik R. Puknys Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Palo Alto, California, and Andrew J. Vance, of Washington, DC.

Appealed from: United States District Court for the Northern District of California

Judge Jeremy Fogel

# United States Court of Appeals for the Federal Circuit

2007-1080

MICRON TECHNOLOGY, INC.,

Plaintiff-Appellant,

v.

MOSAID TECHNOLOGIES, INC.,

Defendant-Appellee.

_____

DECIDED:  February 29, 2008

_____

Appeal from the United States District Court for the Northern District of California in case no. 06-CV-4496, Judge Jeremy Fogel.

Before NEWMAN, RADER, and DYK, Circuit Judges.

RADER, Circuit Judge.

The United States District Court for the Northern District of California determined that Micron Technology, Inc. (Micron) cannot show jurisdiction for its declaratory judgment action.  Because the district court relied on a doctrine rejected by the United States Supreme Court in MedImmune Inc. v. Genentech Inc., 127 S. Ct. 764 (2007), this court reverses and remands.

I

Micron is one of the four leading dynamic random access memory chip (DRAM) manufacturers.  Samsung Electronics Company Ltd. (Samsung), Hynix Semiconductor Inc. (Hynix), Infineon Technologies of North America (Infineon), and Micron account for more than 75% of worldwide DRAM sales.  MOSAID Technologies, Inc. (MOSAID)

owns several patents in the field of DRAM chips, which it licenses to the main producers.

On June 6, 2001, MOSAID sent a warning letter strongly suggesting that Micron should license its technology. MOSAID sent follow-up letters on December 19, 2001; March 18, 2002; and July 19, 2002. Because the four major DRAM manufacturers did not take licenses, MOSAID began enforcing its patents in court, beginning with Samsung. Suspecting it was likely next on the list, Infineon filed an action seeking a declaratory judgment that it was not infringing MOSAID's patents. After a claim construction unfavorable to MOSAID, Infineon won a summary judgment of noninfringement.

Later in the ongoing saga of litigation, Samsung and MOSAID settled. On the day of the settlement, MOSAID sued Hynix. The case against Hynix settled as well when Hynix agreed to a license. On April 6, 2005 MOSAID asserted three new patents against Infineon. This case also settled when Infineon agreed to a license. After each licensing agreement, MOSAID issued public statements reiterating its intent to pursue its aggressive licensing strategy. MOSAID also made similar statements in its annual reports. In its 2005 annual report, for instance, MOSAID stated:

> MOSAID believes that all companies which manufacture DRAM products . . . use MOSAID's patented circuit technology. With approximately half the DRAM industry now under license, it is clear that our remaining strategy is to license the remaining DRAM manufacturers. We will apply our strong IP portfolio and our significantly improved financial position in the <u>aggressive</u> pursuit of this objective.

MOSAID Technologies Inc., Annual Report (Letter to Shareholders), at 2 (2005) (emphasis added).

The record shows that MOSAID pursues a systematic licensing and litigation strategy. As part of that strategy, MOSAID also tried to obtain vacatur of the unfavorable claim construction and noninfringement rulings in the earlier Infineon case. The vacatur would strengthen MOSAID's case in future litigation against other DRAM manufacturers. In a June 14 conference call with analysts, MOSAID stated its goal to "reset the clock" so that "no one can rely on any of those former rulings." During this call, MOSAID also indicated its intent to return to court again soon on these patents promising to be "unrelenting in the assertion of [its] patent portfolio." Press reports predicted that Micron posed the obvious next target now that MOSAID had settled with the other three leading DRAM manufacturers (Samsung, Hynix, and Infineon).

At that point, Micron filed a declaratory action in the Northern District of California on July 24, 2005, seeking a declaration of noninfringement of fourteen MOSAID patents. The next day, MOSAID filed an infringement action against Micron in the Eastern District of Texas asserting seven patents and naming two additional small DRAM manufacturers as additional defendants. Later, MOSAID added another defendant and three additional patents to its suit in Texas, but that infringement suit did not include six patents for which Micron sought declaratory judgment relief.

In the California action, MOSAID filed a motion to dismiss for lack of subject matter jurisdiction under Article III of the United States Constitution or the Declaratory Judgment Act, 28 U.S.C. § 2201. The district court granted that motion, finding no jurisdiction under the reasonable apprehension of suit test. <u>Micron Tech. Inc., v. MOSAID Techs., Inc.</u>, No. C 06-4496, 2006 U.S. Dist. LEXIS 81510 (N.D. Cal. Oct. 23, 2006) (<u>Jurisdiction Order</u>). The district court also held that even if subject matter

jurisdiction were established, it would exercise its discretion and still decline to hear the case.

II

A district court's grant of a motion to dismiss for lack of subject matter jurisdiction presents a question of law that this court reviews without deference. Pennington Seed, Inc. v. Produce Exch. No. 299, 457 F.3d 1334, 1338-39 (Fed. Cir. 2006). In dismissing, the district court relied on the first factor of the pre-MedImmune declaratory judgment test. Thus, the trial court discerned no explicit threat or other action by the patentee which creates a reasonable apprehension of suit. BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 977 (Fed. Cir. 1993). The district court noted MOSAID's pattern of serial litigation, but ultimately decided that "MOSAID's conduct was not sufficient to give rise to a reasonable apprehension of litigation against Micron." Jurisdiction Order at 5. Specifically, the trial court cited the record of no threats against Micron for the last four years, of no threats to Micron's customers, and of no public comments from MOSAID that mentioned Micron by name. Id.

The Supreme Court's opinion in MedImmune criticized the reasonable apprehension of suit test. MedImmune, 127 S. Ct. at 774; SanDisk Corp. v. STMicroelectronics Inc., 480 F.3d 1372, 1380 (Fed. Cir. 2007). In footnote 11 of its opinion, the Supreme Court concluded that the reasonable apprehension test conflicted with several precedents:

> The reasonable-apprehension-of-suit test also conflicts with our decisions in Md. Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941), where jurisdiction obtained even though the collision-victim defendant could not have sued the declaratory-judgment plaintiff-insurer without first obtaining a judgment against the insured; and Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239 (1937), where jurisdiction obtained even though the very

reason the insurer sought declaratory relief was that the insured had given no indication that he would file suit. It is also in tension with Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 98 (1993), which held that appellate affirmance of a judgment of noninfringement, eliminating any apprehension of suit, does not moot a declaratory judgment counterclaim of patent invalidity.

MedImmune, 127 S. Ct. at 774 n.11. The Supreme Court set forth the correct standard for jurisdiction over a declaratory judgment action:

[T]hat the dispute be definite and concrete, touching the legal relations having adverse legal interests and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. Aetna Life, 300 U.S. at 240.

MedImmune, 127 S. Ct. at 774 n.11. Thus, in place of the reasonable threat of imminent suit test, the Supreme Court required a showing of "whether the facts alleged under all the circumstances show that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, 127 S. Ct. at 771 (quoting Md. Cas., 312 U.S. at 273). In short, "all the circumstances" must show a controversy.

The standard for jurisdiction thus depends in part on the record evidence for a case or controversy within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201(a). The Declaratory Judgment Act provides, in relevant part: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any

interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

The "actual controversy" requirement of the Declaratory Judgment Act is rooted in Article III of the Constitution, which provides for federal jurisdiction over only "cases and controversies," as MedImmune recognizes. Because this court's jurisdiction extends only to cases or controversies under Article III, the record must show an actual controversy between the parties. SanDisk Corp., 480 F.3d at 1378.

Indeed the record supports a judgment that the dispute between Micron and MOSAID is a case and controversy within the purview of declaratory judgment jurisdiction. Beginning in 2001, after receiving several threats itself, Micron watched MOSAID sue each of the other leading DRAM manufacturers. MOSAID devotes considerable attention to the four years that have elapsed since the last letter. This lapse in time is unavailing because MOSAID, during this period, was busy negotiating with other leading DRAM manufacturers.

Nonetheless, threatening letters and behavioral observations are not Micron's only evidence about the authenticity of this dispute. MOSAID's recent public statements and annual reports also confirm its intent to continue an aggressive litigation strategy. In sum, the record evidence amply supports a real and substantial dispute between these parties. The record evidence at the time of the filing in the California district court strongly suggested that MOSAID would sue Micron soon. Indeed, that suit, filed only one day later, was actually pending in Texas at the time that the California district court made its ruling. Thus, the parties in this dispute are really just contesting the location and right to choose the forum for their inevitable suit.

The Declaratory Judgment Act exists precisely for situations such as this. "The purpose of the Declaratory Judgment Act . . . in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F.2d 953, 956 (Fed. Cir. 1987). In Electronics for Imaging, this court elaborated on the purposes of the Act:

> [A] patent owner . . . attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity. . . . Before the Act, competitors victimized by that tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue. After the Act, those competitors were no longer restricted to an in terrorem choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests.

See Elecs. for Imaging, Inc. v. Coyle, 394 F.3d 1341, 1346 (Fed. Cir. 2005) (quoting Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 735 (Fed. Cir. 1988)). Even when jurisdiction is present, district courts retain some measure of discretion to decline to hear the case. Wilton v. Seven Falls Co., 515 U.S. 277, 289 (1995). A district court, when deciding whether to exercise its discretion, should decide whether hearing the case would "serve the objectives for which the Declaratory Judgment Act was created." Capo, Inc. v. Dioptics Med. Prods., Inc., 387 F.3d 1352, 1355 (Fed. Cir. 2004) (quoting EMC Corp. v. Norand Corp., 89 F.3d 807, 814 (Fed. Cir. 1996)). When these objectives are served, dismissal is rarely proper. Id.

Because satisfaction of the reasonable apprehension of suit test is no longer a necessary criterion for declaratory judgment jurisdiction, the district court did not weigh the facts of this case under the correct standard. The facts alleged under all the circumstances show a substantial controversy between parties with adverse legal

interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. In short, upon application of the proper legal standard articulated in MedImmune, this court discerns that the California district court has jurisdiction. Further, this court finds that the objectives of the Declaratory Judgment Act would be met by allowing the case to be heard by the California court, rather than by deferring to the forum of the later-filed suit.

Whether intended or not, the now more lenient legal standard facilitates or enhances the availability of declaratory judgment jurisdiction in patent cases. Sony Elecs. Inc., v. Guardian Media Techs., Ltd., 497 F.3d 1271 (Fed. Cir. 2007) (remand of district court's dismissal of declaratory judgment action); Teva Pharms. USA, Inc., Novartis Pharms. Corp., 482 F.3d 1330 (Fed. Cir. 2007) (reversal of district court's dismissal of declaratory judgment action); SanDisk Corp., 480 F.3d 1372 (remand of district court's dismissal of declaratory judgment action). The resulting ease of achieving declaratory judgment jurisdiction in patent cases is accompanied by unique challenges. For instance, the ease of obtaining a declaratory judgment could occasion a forum-seeking race to the courthouse between accused infringers and patent holders. Thus, in cases such as this with competing forum interests, the trial court needs to consider the "convenience factors" found in a transfer analysis under 28 U.S.C. § 1404(a).

III

The word "may" within the language of the Declaratory Judgment Act means that a court has discretion to accept a declaratory judgment action in the first place: "In a case of actual controversy within its jurisdiction . . . any court . . . may declare the rights

and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). Although broad, that discretion is not absolute. See Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 936 (Fed. Cir. 1993) (citing 10A Charles A. Wright et al., Federal Practice and Procedure § 2759, at 655-56 (2d ed. 1983 and Supp. 1992)); see also Capo, 387 F.3d at 1355 (citing Public Affairs Assocs., Inc. v. Rickover, 369 U.S. 111, 112 (1962)) ("There must be well-founded reasons for declining to entertain a declaratory judgment action."). The extent of a district court's discretion to decline to address a declaratory judgment action over which it has jurisdiction can present difficult questions.

The Northern District of California in the case at hand declined to hear the declaratory judgment action. But here the district court's grounds for declining to exercise such jurisdiction were not sufficient. Without the benefit of the Supreme Court's reasoning and this court's subsequent application of those standards, the California district court found that Micron's declaratory relief action is "tenuous at best." Jurisdiction Order at 6. The California district court also opined that the action may be fully litigated in the Eastern District of Texas because the action filed there is "broader" than the declaratory relief action, and that because the cases were filed only one day apart, the California court was no more invested in the case than the Texas court. Id. In the present environment, with competing lawsuits as the likely norm, those considerations are no longer appropriate.

At the outset, the California district court's "tenuous at best" determination relied on the now-defunct reasonable apprehension of suit test. Consequently, this court can no longer give weight to this reason for the district court's discretionary dismissal. This

court also gives little weight to the district court's second reason, namely that the second-filed infringement action is broader than the first filed declaratory judgment action. This reason carries little weight because a patent holder may often easily file an artificially broader infringement suit to avoid declaratory judgment jurisdiction. If, as in this case, a patent holder could simply name another defendant or add a few additional claims to the later filed infringement, then the Supreme Court's more lenient standard for the declaratory judgment plaintiff would lose its primary intended effect. Accordingly, although the relationship between the two competing lawsuits remains a consideration, this consideration cannot be given undue weight because it is easily manipulated.

This case actually illustrates some of the difficulty of giving too much weight to this factor. While the competing infringement case in Texas is indeed broader in some regards (names additional defendants and additional patents), in other respects it is narrower. For instance, some patents in the declaratory judgment action are not involved in the infringement litigation.

Lastly, the trial court perhaps overemphasized that neither court was yet vested in the case. In light of the new more lenient standard for declaratory judgment jurisdiction, competing patent lawsuits may be filed within relatively short time frames. District courts, typically the ones where declaratory judgment actions are filed, as occurred in the present controversy, will have to decide whether to keep the case or decline to hear it in favor of the other forum, most likely where the infringement action is filed. Instead of relying solely on considerations such as tenuousness of jurisdiction, broadness of case, and degree of vestment, as in this case, or automatically going with the first filed action, the more appropriate analysis takes account of the convenience

factors under 28 U.S.C. § 1404(a).  Indeed, in this case a motion to transfer accompanied the motion to dismiss which the court granted.  The trial court did not reach the motion to transfer.  On the facts of this case, where the two actions were filed almost simultaneously, this court detects that the transfer analysis essentially mirrors the considerations that govern whether the California court could decline to hear the case.

Section 1404(a) of Title 28 provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The general rule favors the forum of the first-filed action, whether or not it is a declaratory judgment action. Genentech, 998 F.2d at 937.  The trial courts have discretion to make exceptions to this general rule in the interest of justice or expediency, as in any issue of choice of forum. Id.  These exceptions are not rare.  Id.  A district court may consider a party's intention to preempt another's infringement suit when ruling on the dismissal of a declaratory action, but that consideration is merely one factor in the analysis.  Id. at 938.  Other factors include the convenience and availability of witnesses, the absence of jurisdiction over all necessary or desirable parties, and the possibility of consolidation with related litigation.  Id.  To repeat, "[t]he considerations affecting transfer to or dismissal in favor of another forum do not change simply because the first-filed action is a declaratory action."  Id.; Elecs. for Imaging, 394 F.3d at 1348.

These "convenience factors" take on added significance in light of the newly understood legal environment surrounding declaratory judgment jurisdiction in patent cases.  Given the greater likelihood of jurisdiction for declaratory judgment filers, these

potential defendants will have greater opportunity to race to the courthouse to seek a forum more convenient and amenable to their legal interests. By the same token, patent holders will similarly race to protect their convenience and other perceived advantages. Therefore, the district court judge faced with reaching a jurisdictional decision about a declaratory judgment action with an impending infringement action either filed or on the near horizon should not reach a decision based on any categorical rules. The first-filed suit rule, for instance, will not always yield the most convenient and suitable forum. Therefore, the trial court weighing jurisdiction additionally must consider the real underlying dispute: the convenience and suitability of competing forums. In sum, the trial court must weigh the factors used in a transfer analysis as for any other transfer motion. In other words, this court notes that when the discretionary determination is presented after the filing of an infringement action, the jurisdiction question is basically the same as a transfer action under § 1404(a).

The convenience and availability of witnesses, absence of jurisdiction over all necessary or desirable parties, possibility of consolidation with related litigation, or considerations relating to the interest of justice must be evaluated to ensure the case receives attention in the most appropriate forum. Eventually, robust consideration of these factors will reduce the incentives for a race to the courthouse because both parties will realize that the case will be heard or transferred to the most convenient or suitable forum.

With an eye to the convenience factors, the Northern District of California is the more appropriate forum for the dispute between Micron and MOSAID. Although MOSAID is a Canadian company, its U.S. operations are based out of the Northern

District of California.  Both Micron and MOSAID do business both in California and Texas, so this does not weigh in favor of either forum.  Also, the record does not show that availability of witnesses or jurisdiction over desirable parties favors Texas over California.  While the well-known patent forum of the Eastern District of Texas has heard cases involving some of the same patents, the record does not show any ongoing litigation requiring consolidation.  Therefore, this factor also does not suggest a better forum in Texas.  On balance, the jurisdiction of the first filed declaratory judgment action appears to be the more convenient forum for both parties.

A district court's discretion to decline jurisdiction is reviewed for an abuse of that discretion.  Wilton, 515 U.S. at 289; EMC Corp. v. Norand Corp., 89 F.3d 807 (Fed. Cir. 1996).  An abuse of discretion occurs when:  "(1) the court's decision was clearly unreasonable, arbitrary, or fanciful; (2) the decision was based on an erroneous conclusion of law; (3) the court's findings were clearly erroneous; or (4) the record contains no evidence upon which the court rationally could base its decision."  Minn. Mining and Mfg. Co. v. Norton Co., 929 F.2d 670, 673 (Fed. Cir. 1991).  As noted earlier, the trial court applied a standard for declaratory judgment jurisdiction that the Supreme Court has altered, resulting in an error of law.  Moreover, the trial court needed to evaluate the "convenience factors" before effectively transferring the case to another jurisdiction.  Applying the relevant convenience factors, it would be an abuse of discretion to transfer the action.  Accordingly, this court reverses and remands back to the district court.

REVERSED AND REMANDED